## COHALAN v. NEW YORK PRESS CO.

(Supreme Court, Appellate Division, First Department. December 29, 1911.)

APPEAL AND ERROR (§ 1068*)—HARMLESS ERROR—ERRONEOUS INSTRUCTIONS.

Where, in an action for libel, the error went only to the measure of damages without increasing the damages for the publication of the libel which justified the jury in awarding a sum equal to the verdict without including punitive damages, the error must be disregarded, and the judgment affirmed.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4225–4230; Dec. Dig. § 1068.*]

Ingraham, P. J., and Laughlin, J., dissenting.

Appeal from Trial Term, New York County.

Action by John P. Cohalan against the New York Press Company. From a judgment for plaintiff and from an order denying a new trial, defendant appeals. Affirmed.

See, also, 124 App. Div. 920, 108 N. Y. Supp. 1127, 129 N. Y. Supp. 1111.

The action is brought to recover damages alleged to have been sustained by plaintiff in consequence of the publication by defendant in the New York Press, a daily newspaper printed and circulated by it in New York and elsewhere, on the 4th day of May, 1907, in its editorial columns. The article was as follows:

"Tammany at Albany.

"An indication that the peace pact in Albany was part of a corrupt deal of the Murphy crowd, the McClellan crowd and the criminal element of the Republican Party in the legislature to save Kelsey for the Insurance Ring, kill the Mayoralty Recount Bill and assassinate the Public Service measure by an unholy alliance, was furnished by the shift on Thursday night of two democrats who had announced that they were so committed to serving the interests of the public that they would support Governor Hughes. These two men were Ackroyd and Cohalan. Sneaking into the corporation lines at the last minute they gave McCarren, captain of the Raines renegades and commander-in-chief of the whole forces against the people, a solid democratic following in the Senate, with the exception of the scrupulously faithful democratic public servants, Senators Fuller and Taylor.

"In this passing glance at the mongrel combination against the welfare of the people of New York it is not untimely to remark that the earlier reports of Cohalan as a legislative pup suggested that he might develop into a fine, big, almost noble mastiff; whereas, full grown, he actually appears at the Senate Dog Show a measly little Mexican Hairless Spaniel that gives a person the creepy, crawly sensation one feels when contemplating vermin."

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

At the time of the publication, the plaintiff was a member of the State Senate, having been duly elected to said office for the Twenty-Second senatorial district, borough of the Bronx, county of New York, and he had been a member of the Assembly in the Legislature during the year 1906. The caption of the article, "Tammany at Albany," was printed in large type. There was no other senator by the name of Cohalan, and it is not controverted that the article referred to the plaintiff. He was also a member of the bar. It is alleged in the complaint that the article referred to the plaintiff in his professional capacity and as a member of the Assembly and of the Senate, and that it was false and was maliciously intended to injure him personally, professionally, and in his official capacity, and that the words "the Senate Dog Show" meant the Senate of the state of New York in session, and that the word "dog" in the article was intended by defendant and understood by the readers of the paper to mean the plaintiff.

Argued before INGRAHAM, P. J., and LAUGHLIN, SCOTT, MILLER, and DOWLING, JJ.

Philip Carpenter (Frank Parker Ufford, on the brief), for appellant.
William McArthur (Mirabeau L. Towns, on the brief), for respondent.

LAUGHLIN, J. The court did not instruct the jury either that the article was libelous per se or was not privileged as matter of law, but left it to the jury to determine the sense in which it would be, and was, understood by the readers, with proper instructions to the effect that, if it exceeded the bounds of fair and honest criticism, it was not privileged, and that it was for the jury to determine whether or not the effect of the article was "to hold the plaintiff up to public hatred, reproach, odium, execration, contempt, derision or ridicule," and instructed them that, if such was its meaning, then the article was libelous per se, and that, when an article is libelous per se, the law "presupposes malice," and that it is unnecessary for the plaintiff in such case to prove actual malice, and then added:

"An article in a newspaper falsely holding a public official up to reproach as shirking his public duties, as disregarding the obligations assumed by him, is libelous per se."

The court further charged that if the jury found that the article was libelous per se, and that it was not privileged, then the plaintiff was entitled to recover compensatory damages, and, in addition thereto, exemplary damages, if the defendant in publishing it was actuated by "actual malice, or its equivalent," and that in determining whether or not the defendant was actuated by actual malice in publishing the article they might consider the nature of the publication and the circumstances under which it was published, and the other evidence in the case; and added that, if there was malice and the publication was made wantonly and recklessly, the jury might award exemplary or punitive damages.

These instructions were not strictly correct, and did not clearly define what was meant by the equivalent of actual malice. For the purpose of awarding compensatory damages, malice is inferred as matter of law from an article which is libelous per se; but malice essential to the award of punitive damages is not *necessarily* to be inferred from such an article, although it *may* be so inferred; and the plaintiff is not relieved from proving actual malice, in the sense

that those words are used in determining whether or not he is entitled to recover exemplary damages. Where a publication is made wantonly and recklessly, without proper investigation and in utter disregard of the rights of the plaintiff, this is in law equivalent to actual malice for the purpose of determining the right of the jury to award exemplary damages, and the court doubtless so intended to instruct the jury, but the charge as delivered falls short of doing so. The court failed to give the jury any instructions with respect to the burden of proof on the question of actual malice, or its equivalent, to warrant them in awarding exemplary damages, and on objection made by counsel for plaintiff, after consideration of the request and deliberation thereon, declined a request, duly and timely made, to instruct the jury that, "in order to justify the jury in awarding a sum beyond mere compensation, the plaintiff must establish the fact of actual malice and must do so by a fair preponderance of evidence," and declined to instruct the jury that, if they were unable to determine whether there was actual malice or not, they were not at liberty to award exemplary or punitive damages, and defendant duly excepted. The court had, as has been stated, instructed the jury that they could not award exemplary damages unless they found actual malice.

We are of opinion that the article in part exceeded the bounds of fair and honest criticism as matter of law, and was libelous per se (Hoey v. N. Y. Times, 138 App. Div. 149, 156, 122 N. Y. Supp. 978), and that, if the jury had been properly instructed, a recovery could be sustained, not only for compensatory, but for punitive, damages. The burden, however, of showing actual or express malice, or its equivalent, in the sense in which those words are used in the law of libel, viz., that the article was published wantonly and recklessly in utter disregard of the truth and of the rights of the plaintiff, or of its effect upon his personal, professional or official reputation, was on the plaintiff (Carpenter v. N. Y. Evening Journal Pub. Co., 111 App. Div. 266, 97 N. Y. Supp. 478; Liccione v. Collier, 133 App. Div. 40, 117 N. Y. Supp. 639; Bingham v. Gaynor, 135 App. Div. 426, 119 N. Y. Supp. 1010). The defendant offered evidence tending to show that it entertained no ill will toward the plaintiff, and that the article was not published hastily, or recklessly, or wantonly, but after careful investigation with respect to the plaintiff's official record and particularly his official action on the matter to which the article relates. In these circumstances a question of fact was presented as to whether or not the defendant was actuated by actual malice, or such recklessness as would be equivalent thereto, in publishing the article; and the refusal of the court to instruct the jury that the burden of proof on that issue was on the plaintiff was prejudicial to the rights of the defendant.

It follows, therefore, that the judgment and order should be reversed and a new trial granted, with costs to appellant to abide the event.

INGRAHAM, P. J. I concur with Mr. Justice LAUGHLIN; but I also think that this judgment should be reversed upon the ground

that a consideration of the whole record satisfies me that the case was submitted to the jury under such conditions that the defendant did not have a fair trial, and that the ends of justice require that a new trial should be ordered.

.SCOTT, J.   I agree that there was error committed in the particulars pointed out by Mr. Justice LAUGHLIN; but that error went only to the measure of damages, and, in view of the nature of the article and the amount of the verdict, I do not think it can fairly be said that it really increased the damages, since the article was one as to which the jury would have been justified in awarding a sum equal to the verdict without including punitive damages.

I think, therefore, that the error was one which we can overlook, and that the judgment and order appealed from should be affirmed, with costs.

MILLER and DOWLING, JJ., concur.